The Counsel for Appellees, presented the following peti~ tionfor re hearing.
The counsel for Triplett, conceive it to be a duty* which they owe to their client, and the uniform administration of justice, respectfully, to solicit of the court, a reconsideration of the opinion delivered in this case.
At all times, a petition like this, is burdensome to counsel,and more so, to the court, and to impose that burden, is a matter of regret; but in ho case, does it become more disagreeable, than when it falls to the lot of counsel, to advocate former decisions, of the same court, and to contend that the ancient landmarks, are removed by a decision, and that the uni- *283 fortuity of the law, is substituted by a new course of proceedings, evidently calculated, as ihey conceive, to produce uncertainty, which always affects the try, if caused by a court of the last resort.
The first, and most prominent point, in the opinion, under review.,is that part, which destroys profert,oyer, and all the doctrines attending them, and sweeps away the conveniences and consequences thereof. The, court seems to have come to this conclusion by the following mode of reasoning:
1st. Profert was matter of substance, anciesltly in England, but was afterwards made mere form by statute, in that country, and available only in special demurrer.
2d. These statutes, though subsequent to the fourth of James the first, were afterwards adopted in Virginia, from which slate, they were adopted by the constitution of this state.
3d. A statute of our own, has since abolished special demurrers.
Therefore, want of profert, cannot be taken advan-. tage of, at all, and both profert and oyer, are now non entities in our law. Hence, the decision of Met-calfe vs. Standeford I. Bibb, 521, is overruled as not law. If this was the only case in our courts which was blotted out,it might not be so much tobe regretted, although it has ruled the courts of the country, since it was given. But there is a series of cases not noticed by the court, or supposed to exist, which falls with it." In short, the law has been long settled, and often recognized, that profert was substance, and the want thereof, could be reached by general demurrer and in deed, in arrest of judgment, or even a writ of error, unless a verdict, or writ of inquiry, cured the defect or an appearance and judgment, by nil dicit or non sum informatus.
In the case of Scott vs. Curd, in 1806, Har. 64, this court reversed a judgment rendered for a plaintiff, without jury, because no profert was made of the writing, on which the action was founded.
*284 In the case of Sooke vs. Nowles, I. Bibb, 283, the want of profert was held a substantial defect, in plea.
In Marshall and Bohannan vs. Reed, the want of profert, is held to be cured, after verdict, and in a note of the reporter, and authorities there ci.ted, the true distinction,, is laid down as established, that is, that want of profert can be taken advantage of, at any state of the proceedings, unless cured by verdict, or writ of inquiry.
In Hie case of Birney vs. Ham, II Littell’s Reports, 2G7; when treating of the exception taken on general demurrer, to the want of profert, it is decided, that profert, in that case, was unnecessary, but it is said, that “if a profert had been necessary, and he (the defendant below had, without oyer, demurred, the oh-jcction might have been available.”
Against these authorities, it is said arguendo, in the pase of Walton vs Kindred’s administratrix, V. Mon. 388, that profert, of letters of administration, is form. There profert was made, and^ a general demurrer filed, and the question was, whether the pro-fert was sufficient, of course, all said,.dispensing with profert, is mere dictum.
After so many cases, decided on the same point, (and we are satisfied there are many more, which have gone offiby entry, on the record, without written opinion,) we did hope, that the doctrine would have been left asleep, and not be waked up, and again set afloat. For upwards of twenty years, it has been taken as law, in this country, that want of profert qf a writing, declared on, if taken advantage of by demurrer, would be a fatal defect. Now we are told, that it is not fatal at any stage, in short, that profert is abolished, With profert also, and oyer, and spreading the writing on record! For the doctrine is well settled, that if profert is unnecessary, oyer cannot be given, if demanded. If oyer cannot be given, then the writing cannot be made apart of the record, at all, unless by bill of exceptions or demurrer, to evidence; and where there is no bill of exceptions, oridemurrer to evidence, (here is no way known of making a writing, declared on *285 .part of the record. It would be an endless job, to recite the cases, where it has been held by this court, that a writing declared on, is no part of the record, and cannot be noticed by the court, and we are wholly unable, to find any other remedy, or mode given to a defendant below, to get the bond or writing sued on, placed on the record, or how to get it before this court, for without oyer, this court will not notice it, as held by numerous decisions.
The court’seems to suppose, that this difficulty is obviated by the common practice, of filing the paper. But this can be thus answered; filing the paper, makes it no part of the record. Unlessitis such, the court cannot notice it, and no variance between the writing declared on, and that filed, can be taken advantage of, and if every member of the bar, does not choose to conform to the common practice, what law will compel him to conform to it? The court seems to think, that the courts of original jurisdiction, can compel its production, before the other side can be compelled to plead. How can he be compelled? The only mode known to these memorialists, is, by craving oyer, making the demand of record, and according to the ancient law, the court will stay the cause, and will dismiss it, unless the writing is produced, or the oyer effectually counterpleaded. They can find no other remedy. It is true, that a writing, not sealed, by common law, need not be set out with a profert, nor could oyer, be craved of it. But the general issue denied its execution, and if not sufficiently proved on the trial, it could be rejected on hearing, or if it varied from the contract alleged, the evidence was excluded. It is no argument against us, to say, that such writings are now raised, to the footing of sealed instruments, This does not bring sealed instruments to their level, but brings them up to sealed instruments, of course, profert of them is now necessary, and oyer may be granted. •
The court seems to leave it doubtful, whether pleading over, did not cure the want of profert, and whether a demurrer to a plea,, could reach the matter for this cause. It is well, it is left doubtful, for it may be assumed as a certainty, that want of profert. *286 is not cured by pleading over, if plaintiff demurs to pleas. It is admitted, that pleading over, and not demurring in the first instance, does cure some defects, but proferí is not one. The principles on which defects are cured, and the cases so cured are better set out,in Stephen on pleading, 166, than in any other author, thus, “that if a man'pieadsover, he shall never take. advantage of any slip, committed in the pleading of the other side, which he could take advantage of, upon a general demurrer.” So the question goes back to the original inquiry, can the want of proferí be taken advantage of, upon a general demurrer?
If there should then, be doubts about the construction of the statute of Anne, originally; if the English courts, as Chitty seems to suppose, has reduced proferí to mere form, still, a different construction has prevailed on that statute in this country. It cannot be for a moment supposed, that all the former incumbents of the brench, overlooked this statute, as well as the previous one of Charles. No, they saw and well understood them, and’ allowed that their terms were reconcileable to the decisions of this court. Other cases may be quoted, of this court construing statutes in force in England, different from the construction there. Witness the statutes of limitations; and to prevent frauds, and perjuries; and why, let us ask, is the bar and the state at large, now surprised with a different construction ?
If it be conceded, that the British statute of 1753, has adopted literally, the statute of Anne, (a point by no means clear,) still, 'it is insisted that the statute of Anne, bears a different construction from that given by the court. There is not one word, which declares that proferí shall, thereafter, be held to be form, merely. The first clauses, literally, requires all demurrers to be special, unless the “very right of the cause, and matter in law,” shall appear to the judges to be for the demurrant, so that the right and law of the case is not changed; but courts are only restrained from deciding in favor of form, against the “right and law of the case.” Besides, there is an express exception, “so as sufficient matter appear in the said pleadings.”
*287 Now, what is sufficient matter? The law, as it stood before, determined that matter, and -declared that “profert was an indispensable part of sufficient matter.” The remaining clauses, apply to their court in bank, when acting on the records of trials at nisi prius. They barely regulate the mode of taking advantage of these things. They do not convert substance into form; and they never, heretofore, have been held as adopted by the Yirginia act, of 1753, so as to regulate the forms of proceeding; and never have been taken in this country, as dispensing with profert of a deed, which is the foundation of an action. If that statute requires certain matters to be specially set down as causes of demurrer, it does not, from that provision, necessarily follow, that every matter, so to be set down, is form only. It was as competent for the legislature of that country, to direct substance to be specially set down, as it was to require form to be specially assigned. And if the courts of this country, allow these matters to be set down otherwise, the principle is the same. The last clause of the act, acknowledges the correct rule, laid down by the reporter in Bibb’s Reports; that is, if there is no appearance below, and no writ of inquiry, want of profert, will reverse. But on the contrary, if there has been a verdict, a writ of inquiry, or an appearance below, and the exception was not taken, it is not sufficientground to reverse. And if the point is saved in the court below, this court must decide on it, as the court below had to do.
But if the construction heretofore given to this statute, has been erroneous, we protest most solemnly, against altering that construction now; against the overturning several former decisions; against setting everything again afloat, and producing uncertainty in the law. We admit that one case, of late decision, which may not have carried its principles far into our jurisprudence, may not be considered as settling the law; may be overturned and corrected. But we deny that several cases can or ought to be so overturned; nor ought one, provided it has been the guide, and been implicitly followed, for upwards of twenty years. We cannot, therefore, help earnestly, seriously, and respectfully, soliciting the court to stop *288 such a course; to permit the ancient cases to stand, and not to lose us in new paths, which we have not trodden.
There is one idea, which, on first blush, would seem to be inferred from the Opinion rendered, which is not entirely plain; but which ought to be corrected. It is this, that other pleas might aid those demurred to; that pleading over, in other pleas, might aid in oVertuling the demurrer to any one. The court could not have intended this. For the law is too well known, that in deciding on a demurrer to any plea or replication, the decision mlist be the very same, as if there was but one in the record. It is only the correction, therefore, of the phraseology, which is here suggested, to avoid improper inferences being drawn by other courts, or counsel.
But the court seems to have got round this want of profert, another way, and that is, the bond was filed in another court, and the general position seems to be assumed, that if a bond or deed is so filed, it is a sufficient excuse for the want of profert.
With due submission to the court, we must contend that this is not the rule. Alleging, that a bond is filed elsewhere, in the' custody of the law, will not excuse profert, or defeat oyer. The gist of the principle, or rule is, that it must be necessarily detained by the law. If it be not, it must be produced. If a party wishes to avoid the perils of his adversary seeing the deed on which he relies, it will not do for him to file it in some other court, when it is not called for; where the law does not demand and retain it, and then excuse his lack of profert by that means.
The question then comes back to the point, whe-therthis bond, though filed in the office of the appellate court, is necessarily detained there. This question, the court takes for granted, in the affirmative, when this was the point at issue. We maintain the negative, and require the proofs.
There is no similarity between sheriff’s bonds, guardian’s bonds, or those of executors and administrators; and supersedeas and injunction bonds, bonds for costs, as non-residents, or'even bail bonds.
*289 The first class is taken for public purposes, and are executed in a court, who cannot enforce them, and to be there kept. But the latter class is executed to secure one party only,.in the progress of causes, and on the happening of the contingency by which they are forfeited, they belong to the opposite party, and not to the law. They are.no part of the record. If they are, the action thereon, to some extent, is local. It is true, they are not delivered to the party at the moment of their execution. If they were to be thus accepted, they would then, probably, be refused. The clerk then, is the agent of the obligee, constituted by law, to accept, and does so. If the'contingency of affirmance happens, which forfeits the-bond, then the individual to whom it is given, has the exclusive right to it, and it is not to be kept for the use of both parties. Indeed, all the bonds of sheriffs, guardians, Sic. are not kept for the benefit of the obligors, but as there may be many obligees, or persons who have a right to enforce tile bond, it is kept for therm. But can it be said, that when one party alone is, or can be obligee, that the law detains the bond for the benefit of the obligors also? Such an instance of the case of obligors^ cannot be found in law. By examination of ancient cases, when bail bonds were in practice, they were delivered to the party of course, when forfeited. Injunction.bonds, formerly, when forfeited, would, by* order of the chancellor, be delivered to the party. The law does not detain them in vain. If they are part of the record, they must be kept. If not, the law will not keep them, but surrender them to those entitled to them, and then they must be brought into court as other bonds. Lord Raymond, 1135; I. Sellan’s Practice, 291; Raymond, 970; Salkield, 498.
We, therefore, ask for tfie principle of law which makes supersedeas bonds a part of the record, and we also require the statute or principle of common law, which keeps the obligee, from the custody of this paper, when it is forfeited. The. question pending the writ of error, is, whether the judgment is right or wrong, and is undetermined; and after affiripance, this uncertainty is removed. The bond belongs to the obligee, and he may take it and sue elsewhere* '
Jtesponse to fhe petition,
In all cases of profert, dispensed with in the Eng-^00^5’n°tone ^as ^a^en under the observation of these memorialists, where a bond given, pendente lite, to secure the adverse party, and forfeited, was allow-ecj j-0 t,e ]¡;ept out 0f sight of the defendant, because it must be kept in the court where first given.
Wherefore, a re-hearing is respectfully solicited.
To which petition,. Judge Robertson delivered the following response.
The opinion in this case, was the fruit of deliberation. The court had maturely considered the doctrine of profert, and looked to all the consequences of deciding, that it is now not material here, in a declaration. In the view taken of it, in the opinion, 'the considerations urged in the petition, were anticipated, and we then thought, and still think, with undiminished confidence, that all these considerations, and many others which occurred to us, are successfully combated by the authorities, and reasoning, which we have, therein exhibited.
Ás, therefore, the petition presents no new idea on this subject, and nothing which is not, in our opinion, satisfactorily answered already, we deem it superfluous, to enter again, seriously into the argument.
We shall content ourselves with a very summary notice of the petition.
That want of profert, in a declaration, has been treated in England, as no cause for general demurrer, since the statutes- of Charles and Anne, is proved by the authorities undeniably.
So far as we know, or belive, it has never been questioned in England, sincé the statute of Anne. The researches and learning of the petitioning counsel have pot enabled him even to intimate, that there is any opposing authority, or even dictum,.
• That these statutes were adopted- in 1753, in Virginia, cannot be seriously doubted, and seems not to be denied, with any confidence, in the petition. The constitution of this state recognized them as the law here.
The statute of Anne, enacts expressly, that omission to make profert of deeds, bonds, letters testa- *291 Hieníary, &c. shall be cured by verdict, and shall be taken advantage of only by special demurrer. This important fact, has either not been noticed, or is ded by the petitioner. The petition does not deny, that the English authorities, prove indisputably, that since the statute of Anne, omission of profert of the bond, or of the letters testamentary, has been cause of only special demurrer, in England; and it is equally clear, that, in Virginia and Kentucky, since 1753, and 1792, it could be taken advantage of only by special demurrer.
But, as want of profert, was still cause of special demurrer, it was proper to make profert. And hence, all the authorities, on this subject, shew that profert was- required. But they also shew, that want of pro-fert, was not cause of general demurrer.
Thus, the almost universal practise of making pro-fert, has been persisted in; and without discriminating between special and general demurrers, many lawyers and judges may have taken it for granted, that pro-fert is matter of substance.
Without the act of 1811, for simplifying pleadings, profert would now be necessary, unless its omission be cured by verdict. But as it was necessary, only to prevent the effects of a special demurrer, and its omission could not be prejudicial, unless a special demurrer was filed, it can be required' for no purpose, since the abolition of special demurrers.
If any innovation has been made on ancient usage, or if long established authorities, have been overturned, the legislature, and not the court, have done the work of reform. The court has only obeyed the legislative will.
We know of no case, since 1811, in which it has been judicially decided by. this court, that want of profert, is cause of general demurrer. Nonp such has been cited by the petition.
The cases of Scott vs Curd, Hardin, 64; and Sook vs. Knowles, I. Bibb. 283; and Metcalfe vs. Standford, all occurred, and were decided before 1811.
And if they had been more modern, the counsel will find by a re-examination of them, that their aplica *292 tion to the question of profert, in this case is slight, and of very doubtful effect.
The case in Hardin, only decides, that a judgment by default, did not cure the want of profert. This, at that time, was undeniable, if the statute of jeofails did not, as the court supposed, apply to judgments by default. The court decided in that case, nothing more than that judgment by default, cured no defect, of which advantage might have been taken before judgment. Want of proferí might, at that time, have been fatal on special demurrer; and, therefore, it resulted, that it was not cured by judgment by default. But it is not even hinted, that omission to make pro-fort, was cause of general demurrer.
In Sook vs. Knowles, the court decided, that a plea of tender of a deed, was bad on general demurrer unless it made profert of a deed. The distinction between the necessity of proferí, in a plea, and in declaration, has been noticed in the opinion, and some authorities in support of that distinction, refered to.
It was not proper to decide, whether profert is necessary in a plea, because that question, was “coram non indeu.”
But it is obvious, that if it be necessary to make profert in a plea, it would not necessarily follow, that it would be equally necessary to make it in a declaration.
Some of the most important reasons why it might be required in pleas, do not apply now to declarations. It is very questionable whether the statute of Anne, should be, or ever was, construed to embrace pleas.
In the case of Metcalfe vs. Standford, a special de- ' murrer was filed to the declaration, and the court decided that, it ought to hav'e been sustained.
This was certainly right; for, at that time, want of profert was Cause of special demurrer. There is a suggestion by the court, ven passant,” that a want of profert is a substantial defect. But this is only an obiter reference to Leyfield’s case.
All that is said on that subject by llie court, is contained in the following sentence: “that a want of *293 profert is a substantial defect, and may be taken advantage of, upon general demurrer, appears from Ley field’s cased .
If therefore, this suggestion were authoritative, it could not conclude the question, because, when Coke wrote, the statute of Anne did not exist, and of course want of profert, was substantial. On this topic, we are not disposed to .add any thing, to what is said in the opinion. The reasoning and authorities, which it contains, have not been confronted. We endeavored to shew by authority, that when a writing is the foundation of a suit, oyer may be demanded, although profert may not have been made. This part of the opinion,is not noticed in the petition. And as the counsel has cited no authority in support of the opinion which he expresses that oyer cannot be had of a writing of which no profert has heen made, we are the more confident, that we have not been mistaken.
As therefore, a defendant cannot be compelled to plead without oyer, of the writing, on which he shall be sued, there can be no danger of any of the consequences which are apprehended by the counsel. And this is a strong reason to shew, that profert is not material. X
If this court had ever adjudicated expressly on the statute of Anne, and on that of 1811, of this state, and decided, that, notwithstanding their operation, profert is essential in a declaration, we should have acquiesced iri that construction. But as such, a decision has never been rendered, and the reasons and authorities, for establishing a contrary doctrine, are so numerous and direct, as we have found them to be, we did not feel authorised to resist their force. No injury or inconvenience can result from our decision; and it does not unsettle any principle, which has been authoritatively settled. The practice before 1811, was conformable to law. If it has been generally persisted in, since that time, it is, because it accorded with long usage, and the prescribed forms of pleading, in books of practice; and because, as there had been no decision, on the effect of the statutes of Anne, and 1811, of this state, it was most prudent, as well as most agreeable to habit, to continue in the *294 beaten track. It is even difficult to change long established forms. And we see eVen yet,in pleadings, many phrases, which may be dispensed with, but which are used, merely, because their use had become familiar and habitual.
We have not decided, that making profert,is error; we have only decided, that not making it, is not error.
Independently of any other authority, we would consider the case of Walton vs. Kindred, V. Monroe, decisive.
The late judges of this court, decided expressly and unanimously, in that case, that, by the statute of Anne, profert of letters of administration, was reduced from substance to mere form, the omission of which could be taken advantage of, only by special demurrer, and that, since the act of 1811, abolishing special demurrers, it cannot be necessary for any purpose, to make’the profert. We cannot consider this an obiter dictum. But if it were, the learning and research and habitual caution, and rectitude, of those judges, would entitle their suggestions, “arguendo” to almost as much influence, as if they were ever so authoritative. Besides, their reasoning, is not only cogent, but conclusive. It has not been denied, nor can it be, that if they were right, we cannot be wrong. For the same reasoning and authorities, apply with equal effect, to the profert of bonds and deeds, and letters of administration. The statute of Anne, embraces them all expressly, and places, them on precisely the same footing.
When profert of bonds was substantial, that of letters of administration, was equally so, and the same act, which changed the one into matter of form, produced the like effect on the other.
If then, the abolition of special demurrers, has dispensed with the profert of letters of administration, the dispensation must apply to the 'profert of bonds. There is no escape .from this conclusion.
And even, if the petitioning counsel had succeeded in shewing, that the opinion in V. Monroe, is entitled to no respect, his success in that effort, would have *295 contributed but little, if at all, to impair the force, or diminish the conclusiveness of the reasoning, and authorities, which have been employed, in the opinion this case, to prove that profert, in a declaration is .now immaterial.
In addition to the authorities embodied in the opinion we will refer to the opinion of an eminent jurist* Professor Gould says, “at common law,the omission of profert, when profert was necessary, was matter of substance, ilion general demurrer, and not aided by verdict. But now by the 16th 17th Ch. II; and 4th and 5th. Anne, which are the great statutes of jeofails, it is “reduced to mere matter of form, and can be taken advantage of only by special demurrer, so it is aided by pleading over, and by verdict.”
In 'support of this opinion, he refers to many authorities, one of which, is, IV. Ba. Ab. 113.
We are allowed to adhere to the opinion^that since 1750, profert of letters of administration, and of deeds, and bonds, in a declaration, has been matter of form, the omission of which, could be taken advantage of, by special demurrer only; and that, since the act of 1811, such profert, is wholly unnecessary. And we feel authorized to say, that the effect of 'the statutes of Anne,and of 1753, of Virginia, and of 1811, of this state, hás never before been settled, or adjudicated on, by this court, unless it was done in the case of Walton vs. Kindred.
We are therefore, making no innovation, nor are we overturning settled doctrines. We are only declaring the law, as we find it to be, and as it ought (we think) always to have been; and in doing this, we have not treated irreverently, former decisions of this court, nor overleaped any barrier, reared by our predecessors. We repeat, that their only direct decision on the question, as it is now presented, is in V. Monroe, and that accords with our* in this case.
Many more considerations would be’subjoined, if it were proper, to enlarge this response. But we have neither the time nor inclination to amplify it.
The petitioner is, as he should be, jealous of the inviolability of the former decisions, and practice of this court. '
*296 We feel as much respect, for the opinions and usages of our predecessors, as we ought, as men, or as judges, to cherish. And we shall never disregard them, unless we shall be imperiously required to do so, by a regard for principle, and the public interest involved in the just and wholesome administration of the law. ■
Our respect for the counsel, and a disposition to quiet the alarm which he has announced, have induced us to take a respectful notice of his petition*
The petition is overruled.